UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KSENIIA POPOVA,

      Petitioner,

  v.

TODD BLANCHE, *et al.*,

      Respondents.

Case No. C26-1229-MLP

ORDER

  Petitioner Kseniia Popova, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging her redetention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center in Tacoma, Washington. (Dkt. # 1.) Respondents filed a return (dkt. # 5), supported by declarations from ICE Deportation Officer Gennadiy Baz (dkt. # 6) and Respondents' counsel, Lawrence Van Daley (dkt. # 7). Petitioner filed a reply, attaching two documents from her A file. (Dkt. # 8.) Having considered the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1).[1]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

ORDER - 1

## I.     BACKGROUND

Petitioner, a citizen and national of Russia, applied for entry into the United States from Mexico on December 16, 2022, asserting a fear of return to Russia, and was detained and then released on parole. (Dkt. # 1, ¶¶ 19-21; Baz Decl., ¶¶ 4-5; Van Daley Decl., Exs. 1 at 3, 3 at 2.) She was issued a Notice to Appear ("NTA") charging removability as an arriving noncitizen without valid entry document. (Baz Decl., ¶ 6; Van Daley Decl., Ex. 2.) On February 3, 2023, Petitioner was issued an Order of Release on Recognizance ("OREC") under 8 U.S.C. § 1226. (Dkt. # 1, ¶ 22; dkt. # 8, Ex. A.) She asserts that she complied with all conditions and attended all ICE check-ins, which were scheduled for September every year. (Dkt. # 1, ¶ 23.) On January 12, 2024, Petitioner filed an asylum application *pro se*. (Baz Decl., ¶ 7.)

On February 19, 2025, ICE instructed Petitioner to attend an unscheduled check-in on February 25, 2025, at which she was redetained. (Dkt. # 1, ¶ 23; dkt. # 8, Ex. B; Baz Decl., ¶¶ 8-9.) ICE issued an administrative warrant citing removability based on "the pendency of ongoing removal proceedings" and a Notice of Custody Determination pursuant to 8 U.S.C. § 1226. (Van Daley Decl., Ex. 4 at 2-3.)

On May 8, 2025, Petitioner appeared with counsel for a bond hearing and withdrew her request for a change in custody. (Baz Decl., ¶ 12; Van Daley Decl., Ex. 5.)

On August 21, 2025, an immigration judge ("IJ") denied Petitioner's applications for asylum and withholding of removal and ordered her removed to Russia. (Dkt. # 1, ¶ 24; Baz Decl., ¶ 13; Van Daley Decl., Ex. 6.) Petitioner timely appealed on September 18, 2025, to the Board of Immigration Appeals ("BIA"), and the appeal remains pending. (Dkt. # 1, ¶ 24; Baz Decl., ¶ 14.)

ORDER - 2

On October 22, 2025, Petitioner appeared with counsel before an IJ for a hearing on a request for a change in custody. (Baz Decl., ¶ 15; Van Daley Decl., Ex. 7.) The IJ found no jurisdiction to consider a request for change in custody status because Petitioner was an "arriving" noncitizen. (*Id.*) Petitioner reserved appeal but did not file a timely appeal. (*Id.*)

On April 10, 2026, Petitioner filed the instant petition. (Dkt. # 1.)

## II.    DISCUSSION

Petitioner contends her redetention violated her Fifth Amendment to procedural due process. (Dkt. # 1, ¶¶ 38-41.) Respondents argue that Petitioner has the status of an arriving noncitizen and that her detention is therefore mandatory, although they acknowledge that this Court has rejected the government's position. (Dkt. # 5 at 6-7 (citing *G.S. 2 v. Hermosillo*, 2026 WL 227926, at *2 (W.D. Wash. Jan. 28, 2026)).)

### A.    Legal Standards

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A habeas petitioner may obtain relief by proving by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Detention of noncitizens is governed by §§ 235-36 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. §§ 1225-26. Section 1226(a) provides the "default rule," allowing discretionary detention of noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

ORDER - 3

Section 1225 applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission are generally subject to mandatory detention under § 1225(b) and may be released only on parole "for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 287.

Humanitarian parole is a discretionary, case-by-case exception to detention. 8 U.S.C. § 1182(d)(5)(A). Regulations require that parolees "present neither a security risk nor a risk of absconding[.]" 8 C.F.R. § 212.5(b). A grant of parole therefore reflects a determination that (1) urgent humanitarian reasons or significant public benefits justify release and (2) the person is not a security or flight risk. *See* 8 U.S.C. § 1182(d)(5)(A), 8 C.F.R. § 212.5(b).

Parole may terminate automatically upon the individual's departure from the United States or "at the expiration of the time for which parole was authorized," without written notice. 8 C.F.R. § 212.5(e)(1). Otherwise, it may be terminated if the purpose of parole has been accomplished or if an authorized Department of Homeland Security ("DHS") official determines that neither humanitarian reasons nor public benefit warrants continued presence in the United States. *Id.*; *see also* 8 U.S.C § 1182(d)(5)(A). In those circumstances, written notice of termination is required. 8 C.F.R. § 212.5(e)(2)(i).

Following termination of parole, "any order of exclusion, deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 C.F.R. § 212.5(e)(1). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [an authorized DHS official] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R.

ORDER - 4

§ 212.5(e)(2)(i). Continued detention thus must rest on an individualized assessment; otherwise, renewed parole is required.

Where the nominal parole period has lapsed but DHS leaves the noncitizen at liberty and continues to process applications or authorize employment, courts have inferred that parole was effectively continued beyond the stated expiration date. In that circumstance, any later termination must comply with the written-notice procedures of 8 C.F.R. § 212.5(e)(2)(i). *See Telenchana v. Hermosillo*, 2026 WL 696806, at *7 (W.D. Wash. Mar. 12, 2026); *Dieng v. Hermosillo*, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026).

**B.      Petitioner is Subject to Discretionary Detention Under 8 U.S.C. § 1226(a)**

Respondents argue that petitioner's parole "expired and was not extended." (Dkt. # 5 at 6.) They cite *Matter of Q. Li*, 29 I. & N. Dec. 66, 70 (BIA 2025), in which the BIA held that when parole is terminated, a noncitizen is returned to custody under § 1225(b) pending removal proceedings. In *Q. Li*, the noncitizen's parole terminated when she was issued an NTA. *See* 29 I. & N. at 70. Here, however, Petitioner has been treated as subject to § 1226 and, even if still in place, her parole was effectively extended.

Respondents provide a U.S. Customs and Border Protection record of an I-94 form showing an "Admit Until Date" of December 15, 2023, one year after Petitioner entered. (Van Daley Decl., Ex. 3.) However, a few months after parole was granted, Petitioner was issued an OREC under 8 U.S.C. § 1226 and thus was no longer subject to § 1225(b). (Dkt. # 8, Ex. A.) Even after redetention, the administrative warrant and the Notice of Custody Determination cite the authority of § 1226. (Van Daley Decl., Ex. 4 at 2-3.) Moreover, even if release was based on parole, the government accepted Petitioner's asylum after the supposed expiration date application and left her at liberty for more than a year. (*See* Baz Decl., ¶ 7.) Under these

ORDER - 5

circumstances, the "continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply." *See, e.g.*, *Telenchana*, 2026 WL 696806, at *7.

Having repeatedly processed Petitioner pursuant to § 1226, Respondents' argument that § 1225(b) applies is unconvincing. The Court concludes that Petitioner's current detention is governed by the discretionary detention framework of § 1226(a).

**C.      Due Process**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). Petitioner contends all three factors weigh in her favor. (Dkt. # 8 at 4-7.) Aside from arguments related to § 1225(b), Respondents do not address the *Mathews* factors. (*See* dkt. # 5 at 7-9.)

*1.      Private Interest*

Petitioner's interest in remaining free from physical confinement is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. Sept. 12, 2025). During the more than two years she was at liberty, Petitioner filed

ORDER - 6

for asylum, received work authorization, and complied with the conditions of her OREC. (*See* dkt. # 1, ¶ 2.) Petitioner's significant liberty interest weighs in her favor.

### 2.   Risk of Erroneous Deprivation

The risk of erroneous deprivation is high. When Petitioner was granted an OREC, the government necessarily determined she was not a flight risk or a danger. *See, e.g.*, *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1198 (W.D. Wash. 2025) (citing 8 C.F.R. § 236.1(c)(8)). Respondents identify no change in that determination and the redetention documents issued mention only ongoing removal proceedings. (*See* Van Daley Decl., Ex. 4 at 2-3.) The second *Mathews* factor therefore weighs in Petitioner's favor.

### 3.   Governmental Interest

Although the government has legitimate interests in enforcing the immigration laws and ensuring appearance at proceedings, Respondents identify no concrete way in which providing a short, pre-deprivation custody hearing before redetention would materially impede those interests. Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden of such hearings modest relative to the risk and consequences of erroneous detention. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). On this record, Respondents have not shown exigent circumstances—such as an immediate, specific danger or flight risk—that would make pre-deprivation process impracticable.

In sum, the *Mathews* factors strongly favor Petitioner. Habeas relief is therefore warranted. Given the lack of lawful process at the outset of detention and the absence of exigent circumstances, release is the appropriate and constitutionally required remedy. This conclusion aligns with a broad consensus among district courts. *See, e.g.*, *Rojas v. Almodovar*, 2025 WL

ORDER - 7

3034183, at *8 (S.D.N.Y. Oct. 30, 2025) (holding that where "detention was invalid at its inception[,]" petitioner is "entitled to release."); *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *J.Y.L.C. v. Bostock*, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

**D.      Other Relief**

Petitioner also seeks (1) a permanent injunction barring any future redetention without notice and a hearing at which the government must prove, by clear and convincing evidence, that she is a flight risk or a danger to the community and that no alternative conditions would mitigate those risks, and (2) an order requiring Respondents to return her personal property. (Dkt. # 1 at 9; dkt. # 8 at 8.)

Such a permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003); *see Torres v. Hermosillo*, 2026 WL 145715, at *8 (W.D. Wash. Jan. 20, 2026). While the record establishes that Petitioner was redetained without constitutionally adequate process, it does not show a specific, real, and immediate threat that she will again be redetained without due process. In addition, Petitioner has not demonstrated a likelihood that Respondents will unlawfully retain her property. Accordingly, Petitioner's request for permanent injunctive relief is denied.

### III.      CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1)      Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

      a.      Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and

ORDER - 8

        b.   Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

(2)     Petitioner's request for permanent injunctive relief is DENIED without prejudice.

(3)     The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 6th day of May, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 9